# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| COACH, INC. AND COACH SERVICES, INC. | § § § | |
| v. | § § | Cause No. 1:11-CA-20 LY |
| BRIGHTSIDE BOUTIQUE, VIVALABELLE, AND SUZANNA BUNKER | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiffs' Motion for Entry of Default Judgment by the Court, filed September 9, 2011 (Clerk's Dkt. #18) and Plaintiffs' Supplemental Brief in Support of Motion for Entry of Default Judgment, filed November 21, 2011 (Clerk's Dkt. #26). The dispositive motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned RECOMMENDS the District Court GRANT IN PART AND DENY IN PART Plaintiff's Application for Entry of Default Judgment by the Court.

## I. BACKGROUND

By way of this action Plaintiffs seek damages and injunctive relief against Defendants, Brightside Boutique, Vivalabelle, and Suzanna Bunker, for trademark infringement pursuant to the

Lanham Act, Sections 32 and 43 (15 U.S.C. §§ 1114 and 1125(a) respectively).[1] For the purposes of Plaintiffs' motion, the Court accepts the following facts alleged in Plaintiffs' complaint as true.

Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter collectively referred to as "Coach") are users of a variety of legally-protected trademarks, trade dresses, and design elements/copyrights (collectively the "Coach Trademarks"). (Id. ¶ 13). Coach alleges Defendants have engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks. (Id. ¶ 29). Specifically, Coach alleges Defendants operate the Internet site www.vivalabelle.com on which they offer for sale several different colors and styles of counterfeit Coach handbags and diaper bags. In support of this claim, Coach states that on June 29, 2010, and November 5, 2010, an investigator of the firm Investigation Services Company ("ISC") placed Internet orders with Brightside Boutique/Vivalabelle through the Internet site www.vivalabelle.com. The latter order resulted in the delivery of one counterfeit Coach Op Art Trademarked Diaper Bag via United States Postal Service with the return address: S.B., 15405 A Springhill Lane, Pflugerville, Texas 78660. (Id. ¶¶ 31-34). As of the writing of this opinion, the Internet site www.vivalabelle.com is not operational; however, Coach alleges that Defendants continue to sell counterfeit products through other venues. (Pl. Mot. to Supp. Def. J. Rec., Exhibit A; Pl. Suppl. Brief at 4).

---

[1] The Plaintiff's First Amended Complaint included additional causes of action, which were not pursued in the Plaintiffs' Motion for Entry of Default Judgment, Permanent Injunction, and Related Order. These included: copyright infringement under the United States Copyright Act (17 U.S.C. § 501 et seq.); injury to business reputation and trademark dilution under Texas Business and Commerce Code §16.29; and trademark infringement, unfair competition and unjust enrichment under the common law of the State of Texas.

By way of their First Amended Complaint, Plaintiffs seek damages and injunctive relief. Regarding damages under the Lanham Act, Coach requested this Court (1) award statutory damages in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) or, alternatively, order Defendants to account to and pay to Coach all profits realized by their wrongful acts, award Coach its actual damages, and direct that such profits or actual damages be trebled in accordance with Section 35 of the Lanham Act; (2) award costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act; and (3) award pre-judgment interest on any monetary award made part of the judgment against Defendant. (Pl. 1st Am. Compl. at 25).

Regarding injunctive relief, in its First Amended Complaint Coach requested the Court enter judgment granting an injunction(1) prohibiting Defendants from further infringement; (2) requiring Defendants to recall remaining inventory for destruction and report compliance to the Court; and (3) directing any other relief the Court deems appropriate to prevent the counterfeit products from being identified as Coach-authorized products. Id. at 24-25. Coach also requests any "other relief as the Court deems just and proper." Id. at 25.

Defendants were served with copies of Plaintiffs' complaint and summons on January 14, 2011. To date, Defendants have made no appearance in this case. Plaintiffs filed a request for entry of default against Defendants on March 4, 2011. The request was mailed by Plaintiffs' counsel on March 4, 2011 by certified mail, return receipt requested, to Defendants' addresses at Suzanna Bunker, 10835 Ryan Oak Drive, Houston, TX 77065-3136; Brightside Boutique, c/o Suzanna Bunker, 10835 Ryan Oak Drive, Houston, TX 77065-3136; and Vivalabelle, c/o Suzanna Bunker, 10835 Ryan Oak Drive, Houston, TX 77065-3136. The Clerk entered a default against Defendants on March 4, 2011. Plaintiffs have now moved for an entry of default judgment against Defendants.

## II. LEGAL STANDARD

A defendant's default "does not in itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); see also 10A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 3688 at 63 ("Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

## III. DISCUSSION

Coach alleges Defendants have engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of the Coach Trademarks. (Pl. 1st Am. Compl. ¶ 29). By virtue of their default, Defendants have admitted to the truth of these allegations. *United States For Use of M-CO Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Based on these admitted facts, Coach alleges Defendants are liable for trademark infringement under the Lanham Act, Section 32 (15 U.S.C. § 1114 regarding registered marks) and Section 43(a) (15 U.S.C. § 1125(a) regarding unregistered marks). (Pl. Mot. to Enter Def. J. at 4).

### A. Liability

The undersigned recommends the Court find the facts alleged in the First Amended Complaint support liability under the Lanham Act. Although the Lanham Act establishes separate

4

causes of action under Section 32 and Section 43(a), "'[t]he same tests apply to both trademarks and trade dress to determine whether they are protectable and whether they have been infringed, regardless of whether they are registered or unregistered.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F3d 526, 536 (5th Cir. 1998)). To succeed in an infringement claim under the Lanham Act, Plaintiffs must first "establish ownership in a legally protectible mark, and second . . . show infringement by demonstrating a likelihood of confusion." *Amazing Spaces*, 608 F.3d at 235-36 (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008); citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Coach asserts it owns valid federal registrations for a variety of trademarks. (Pl. 1st Am. Compl. ¶¶ 13-20). This satisfies the first prong of the test because "a mark registered … and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." Lanham Act § 33(a), 15 U.S.C. § 1115(a). Regarding the second prong, "[l]ikelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion," and Coach must demonstrate that Defendants' use of the mark "creates a likelihood of confusion in the minds of potential customers as to the 'source, affiliation, or sponsorship'" of the product at issue. *Smack Apparel Co.*, 550 F.3d at 478 (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663-64 (5th Cir. 2000)). To determine whether confusion is likely, the Fifth Circuit considers a nonexhaustive list of factors called the "digits of confusion" test:

(1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these "digits of confusion." This Court has also added "[a]n eighth factor, the degree of care employed by consumers."

*Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 310 (5th Cir. 2008) (citations omitted). In cases such as the present one, where the marks used by the allegedly infringing party are the exact marks owned by the plaintiff, confusion may be found likely without analysis of each digit of confusion. *See id.* (court did not err in not analyzing each digit of confusion because Appellants used Plaintiff's exact marks). Here, Coach has alleged and Defendants have failed to dispute that Defendants used marks identical to or substantially indistinguishable from Coach's Trademarks. (Pl. 1st Am. Compl. ¶ 45). Thus, Coach satisfies the second prong of the test for infringement under the Lanham Act. The undersigned therefore recommends the Court find Defendants liable for trademark counterfeiting and infringement pursuant to § 32 of the Lanham Act, 15 U.S.C. § 1114, and false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### B.  Statutory Damages

Having concluded Plaintiffs are entitled to default judgment on their Lanham Act claims, the Court turns to the question of relief. Coach requests $2,000,000 in statutory damages ($100,000 per mark per counterfeit type of good), the cost of the suit (totaling $682.87), attorney's fees of $17,581.00, and various forms of injunctive relief.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, the Lanham Act provides that at any time before final judgment is rendered a plaintiff may elect an award of statutory damages in the amount of not less than $1,000 nor more

than $200,000 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c)(1). Further, if the Court finds that the use of the counterfeit mark was willful, then the Court may impose damages up to $2,000,000 per counterfeit mark per type of goods sold. *Id.* § 1117(c)(2). Coach alleges Defendants sold, offered for sale, or distributed at least six different types of counterfeit marked goods (handbags, diaper bags, wallets, sunglasses, shoes and luggage) that infringed on numerous Coach Trademarks for a total of twenty instances of counterfeit marks per type of good. (Pl. Mot. to Enter Fin. Def. J. at 14, Ex. A ¶ 12 and Ex. C). Since twenty trademarks are involved in this case, the maximum statutory damages that this Court could award would be $4 million for non-willful conduct or $40 million for willful conduct. Plaintiffs ask the Court to award $2 million in statutory damages ($100,000 per mark per counterfeit type of good).

Regarding determination of willfulness, this court may look to wilfulness in the copyright context. Courts have noted that "the factors relevant to the size of statutory damages under section 504(c) of the Copyright Act are also appropriate to measuring damages under section 1117(c) of the Lanham Act." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1008 (S.D. Tex. 2000) (citing *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999)); *see also Commercial Law League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, 2007 U.S. Dist. LEXIS 68182, at *9 (S.D. Tex. Sept. 14, 2007) (noting that courts have found guidance in analogous provision for statutory damages in 17 U.S.C. § 504(c)). In the copyright context, the Fifth Circuit has held that a "defendant acts 'willfully' within the meaning of [the statutory damages provision of the Copyright Act] . . . if he knows his actions constitute an infringement; the actions need not have been malicious." *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988).

Here, Plaintiffs allege Defendants continue to offer for sale counterfeit Coach products despite e-mail correspondence with Coach's counsel in which counsel advised Bunker to respond to the Court. (Pl. Mot. to Enter Fin. Def. J., Statement of Material Facts ("SOMF") ¶¶ 13; Pl. Mot. to Enter Fin. Def. J., Ex. 2 ¶18). Furthermore, in June 2011 Bunker allegedly posted in an online forum that Coach "couldn't touch [her] with a ten foot pole" and that "the customers will keep on purchasing and my business will continue to expend [sic]. Plain and simple. It has for 3 years and will for years to come." (SOMF ¶ 13; Pl. Mot. to Enter Fin. Def. J., Ex. 5 at 3). Because Defendants have not contested the infringement and allegedly continue to sell and boast of their sales, the undersigned finds Defendant's conduct to be willful for the purposes of the Lanham Act.

The Fifth Circuit has held that "[g]reat latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1304 (5th Cir. 1997) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)). To address this broad discretion, courts have looked to the factors relevant for statutory damages in copyright infringement cases to calculate statutory damages in trademark counterfeiting cases. *Microsoft Corp. v. Software Wholesale Club*, 129 F. Supp. 2d at 1008; *see also Sara Lee Corp.*, 36 F. Supp. 2d at 166 ("The Copyright Act is not only similar in principle to the Trademark Act but identical in much of its statutory damages language. Both authorize determinations within a broad range 'as the court considers just' . . . with the maximum increasing for "willful" infringements."). In the copyright infringement context, courts have considered the following factors in setting statutory damage awards:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Malletier v. Whenu.Com, Inc,* 2007 WL 257717 at *4 (S.D.N.Y. Jan. 26, 2007) (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir.1986)) (internal quotation marks omitted).

In this case, each of these factors weigh in favor of the Plaintiffs and against the Defendants. Regarding factors five and six, Defendants have willfully infringed upon Plaintiffs' trademarks and have failed to cooperate in any way in providing records to assess the value of the infringing materials. As a result, the Court has no means to evaluate factors one and two. Factors four and seven weigh in favor of granting Plaintiffs' statutory damage request in order to discourage the Defendant from continuing to violate the law and to deter this behavior in others. As other courts have pointed out in regard to § 1117, where "a defendant is shown to have acted wilfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (citing *Fitzgerald Publ'g Co.*, 807 F.2d at 1117; *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2nd Cir. 1992)); *see also Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 308303 at *3 (S.D.N.Y. Jan. 20, 2010) ("an award of $100,000 per mark per type of good infringed is appropriate to accomplish the dual goals of compensation and deterrence—and in particular to emphasize that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade").

Furthermore, Plaintiffs' requested statutory damages award is similar to statutory damages awarded in similar cases in this circuit. *See, e.g., Coach, Inc. v. Chocolate 10 Fashions*, No. 4:11-CV-00899 (S.D. Tex. Aug. 19, 2011) (default judgment awarding $100,000 per mark per good infringed); *Coach, Inc. v. Shanghai Boutique*, Cause No. 4:10-CV-4693 (S.D. Tex. May 25, 2011) (default judgment awarding $71,428.57 per mark infringed); *Coach, Inc. v. Eye Candy Shoes and Accessories*, No. 3:09-CV-2169-O (N.D.Tex Oct. 12, 2010) (final judgment awarding $400,000 for an unspecified number of marks on 30 to 60 pieces of counterfeit merchandise in a retail store); *Coach, Inc. v. Geneva Gifts*, No. 4:10-CV2028 (S.D.Tex Feb. 10, 2011) (default judgment awarding $71,428.57 per mark infringed).

Based on all of the above, the undersigned recommends that the Court grant $2 million in statutory damages ($100,000 per mark per counterfeit type of good) to Plaintiff.

### C. Injunctive Relief

Regarding injunctive relief, the "Lanham Act gives to district courts power to issue injunctions, 'according to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 329 (5th Cir. 2006) (quoting 15 U.S.C. § 1116). To prevail in seeking injunctive relief for trademark infringement, a party must succeed on the merits of their trademark claim and "show that the likelihood of confusion will actually cause him irreparable injury for which there is no adequate legal remedy." *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990); *see also Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 667, 680 (W.D. Tex. 2008) ("To merit injunctive relief, a plaintiff must demonstrate (1) success on the merits of trademark claims, and (2) irreparable harm").

The undersigned has recommended above that Coach succeed on the merits of their trademark infringement claims. Concerning irreparable injury, some courts "subscribe to the rule that infringement of a trademark is, by its very nature, an activity which causes irreparable harm—irreparable in the sense that no final decree of a court can adequately compensate a plaintiff for the confusion which has already occurred." *Rubber Specialty, Inc. v. Sneaker Circus, Inc.*, 1977 WL 22727, at *4 (S.D. Fla. Aug. 23, 1977). While the Fifth Circuit has not adopted this presumption, some courts in the Circuit have held "when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury. . . ." *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999); *see also Philip Morris USA*, 547 F.Supp.2d at 681 ("a permanent injunction barring [defendant] from future counterfeit activities is reasonably necessary to prevent irreparable injury"); *Hawkins Pro-Cuts v. DJT Hair*, 1997 WL 446458, at *7 (N.D. Tex. Jul. 25, 1997) ("The likelihood of confusion can constitute irreparable harm in a trademark case."). A likelihood of confusion has been clearly established here. Thus, Defendants' continued sale of counterfeit Coach merchandise constitutes irreparable harm, and Coach is therefore entitled to injunctive relief.

The real question here is the appropriate scope of injunctive relief. "'[T]he scope of injunctive relief is dictated by the extent of the violation established. . . .' The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); citing *Valley v. Rapides Parish Sch. Bd.*, 646 F.2d 925, 942 (5th Cir. 1981)). Coach originally sought a permanent injunction ordering cessation of illegal counterfeiting activity, a recall

order of any remaining inventory, and a report on the recall. (Pl. 1st Am. Compl. at 23-24). The undersigned finds this relief is narrowly tailored to remedy the harms shown by Coach and is necessary to prevent Defendants from unlawfully infringing on Coach's marks. Furthermore, the requested relief enjoining further counterfeiting activity is identical or very similar to injunctive relief granted to Coach by other Courts in this Circuit. *See, e.g., Coach, Inc. v. Linda's Accesorios Y Cellulares*, 2011 WL 2601525 (N.D. Tex. June 30, 2011); *Coach, Inc. v. Chocolate 10 Fashions*, No. 4:11-CV-899 (S.D. Tex. Aug. 19, 2011); *Coach, Inc. v. Shanghai Boutique*, No. 4:10-CV-4693 (S.D. Tex. May 25, 2010); *Coach, Inc. v. Geneva Gifts*, No. 4:10-CV-2028 (S.D. Tex. Feb. 10, 2010). Accordingly, the requests for permanent injunction ordering cessation of illegal counterfeiting activity, a recall order of any remaining inventory, and a report on the recall should be granted.

Coach also requests additional forms of injunctive relief not requested in Coach's Original or First Amended Complaint. Specifically, Coach now proposes the Court (1) order the Domain Name Registry of Defendants' web site, www.vivalabelle.com, disable the site and make it inactive and untransferable unless and until Coach requests that it be re-activated; (2) order the Domain Name Registry to transfer the domain name, www.vivalabelle.com, to Coach's control; (3) provide Coach ongoing authority to provide notice of the Court's order to domain name registries to disable newly discovered domains registered by Defendants that are used in conjunction with the sale of counterfeit goods; and (4) order third party providers, upon notice of the Court's Order, to deliver to Coach copies of documents and records relating to Defendants, Defendants' web sites, assets and business operations. (Pl. Proposed Final Def. J., Permanent Inj., and Related Orders Against Def. at 4-5). This relief was not requested in Plaintiff's First Amended Complaint, and thus Defendants could not have reasonably foreseen it being entered as a result of their default. Furthermore, the

Federal Rules of Civil Procedure expressly prohibit default judgments that differ in kind from what is demanded in the pleadings. Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

In its Supplemental Brief in Support of Motion for Entry of Default Judgment, Coach asserts that these forms of relief fall within a broad request for relief in the First Amended Complaint. (Pl. Supp. Br. in Supp. of Mot. for Entry of Def. J. at 1). Coach points out that their prayer requests the Court direct:

> such other relief as the Court may deem appropriate to prevent consumers, the public and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, imported, advertised, sold, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Coach, or is related in any way to Coach and/or its products.

(Orig. Compl., Prayer, at E). Coach cites *Louis Vuitton Malletier v. Mossseri*, No. 07-2620, 2009 WL 3633882, *6 (D. N.JU. Oct. 28, 2009) and *Chanel, Inc. v. Mosseri*, No. 2:07-CV-02619-SRC-MAS (D. N.J.) as cases where courts have found transference of domain names from Internet counterfeiters to be a reasonable remedy—even when not specifically requested in the complaint. Coach further contends that the transfer of Defendants' domain name in the instant case is a necessary preventative measure to put an effective stop to Defendants' significant infringing [2]

---

[2] In its supplemental briefing, Coach makes no specific mention of its requests that the Court order the domain name registry disable the www.vivalabelle.com site and make it untransferable unless Coach requests it; provide ongoing authority to require domain name registries to disable newly discovered domains registered by Defendants, and order third party providers to deliver to Coach copies of documents and records relating to Defendants, Defendants' web sites, assets and business operations. There are scores of reasons why this relief is overly broad and inappropriate. Most simply, however, because Coach does not address these requests and has thereby abandoned its request for this relief, the undersigned recommends that it not be granted.

Concerning Coach's request that the Court order the transfer of Defendants' domain name, Coach states that Defendants are already operating under another domain name and that Defendants are also selling their goods through Facebook. (Pl. Mot. to Supp. Def. J. Rec., Exhibit A; Pl. Suppl. Brief at 4). Combined with the fact that Defendants have ceased using www.vivalabelle.com, it is unclear that transferring the domain name would have the effect Coach asserts. Since the efficacy of the request is in question and since this request was not included in the original or amended complaint and affects a non-party without notice of the suit, this request should not be granted. Thus, all four of the newly requested forms of relief, not mentioned in Coach's pleadings, should not be granted.

### D. Costs of Court and Attorneys' Fees

Coach requests the Court award costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act, which authorizes the prevailing party to recover the costs of the action. 15 U.S.C. § 1117(a). Plaintiffs' proferred bill of costs shows costs totaling $682.87. (Declaration of Natalie L. Arbaugh ¶ 13 & Ex. A). Coach is thus entitled to $682.87 for costs of court.

Coach also requests the Court award attorneys' fees in the amount of $17,581. (Declaration of Natalie L. Arbaugh ¶ 12, 14). "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An exceptional case is one in which the defendant's conduct is "'malicious,' 'fraudulent,' 'deliberate,' or 'willful,'" and "require[s] a showing of a high degree of culpability." *Martin's Herend Imports,* 112 F.3d at 1305 (quoting *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992)). "Evidence of intentional infringement has been held to establish an exceptional case." *Philip Morris USA*, 547 F.Supp.2d at

681 (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127-28 (5th Cir. 1991)). Based upon the above finding that Defendants' conduct is willful, and that the requested fees are reasonable, the undersigned recommends the Court grant Plaintiffs' request for attorney's fees in the amount of $17,581.

## IV. RECOMMENDATION

The undersigned RECOMMENDS that the District Court GRANT IN PART AND DENY IN PART Plaintiff's Application for Entry of Default Judgment by the Court (Clerk's Dkt. #18) as set forth above. The undersigned RECOMMENDS the District Court award statutory damages in the amount of $2,000,000; cost of the action in the amount of $682.87; and attorney's fees in the amount of $17,581. The undersigned FURTHER RECOMMENDS the District Court permanently enjoin Defendants, their officers, agents, employees, and attorneys, and all persons or entities in active concern or participation with them:

1. From manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products (through www.vivalabelle.com or otherwise) which bear the Coach Trademarks, the Coach Trade Dresses, and/or the Coach Design Elements, or any other mark or design element substantially similar or confusing thereto, including, without limitation, the Infringing Products made the subject of the First Amended Complaint, the Declaration of Tiffany Walden and the Declaration of Joel Voyles, and engaging in any other activity constituting an infringement of any of Coach's rights in the Coach Trademarks, the Coach Trade Dresses, and/or the Coach Design Elements;

2. Using the Coach Trademarks or Designs in connection with the sale of any unauthorized goods.

3. From passing off, inducing or enabling others to sell or pass off, as authentic products produced by Coach or otherwise authorized by Coach, any product not manufactured by Coach or produced under the control or supervision of Coach and approved by Coach, which utilize any of the Coach Trademarks listed in the First Amended Complaint and in the Declaration of Tiffany Walden.

4. From committing any act calculated to cause purchasers to believe that the Defendant(s)' products are those sold under the control and supervision of Coach, or are sponsored, approved or guaranteed by Coach, or are connected with and produced under the control or supervision of Coach;

5. From further diluting and infringing the Coach Trademarks and damaging their goodwill;

6. From engaging in any other activity constituting unfair competition with Coach or that will cause the distinctiveness of the Coach Trademarks to be diluted, or engaging in acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Coach;

7. From causing, aiding, and/or abetting any other person from doing any act proscribed under (a) through (d) above, including effecting assignments or transfers, forming new entities or associations or utilizing any other device for purpose of circumventing or otherwise avoiding the prohibitions set forth above.

The undersigned FURTHER RECOMMENDS the District Court order that Defendants: (1) recall from any distributors and retailers and deliver to Coach for destruction or other disposition all remaining inventory of all Infringing Products, including all advertisements, promotional and marketing materials; and (2) file with the Court and serve on Coach within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-53 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 6th day of January, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE